[No. 22172. Department Two. April 11, 1930.]

F. E. OLLINGER COMPANY, *Respondent,* v. ROBERT H. BENTON *et al., Appellants.*[1]

*Edwin H. Flick* and *Stanley Kent,* for appellants.

*Guy O. Shumate* and *George E. Clarke,* for respondent.

FRENCH, J.—Respondent instituted this action to recover on a promissory note given by appellants in the sum of fifteen hundred dollars. Respondent corporation is engaged in the real estate business in the city of Seattle. Appellants were the owners of certain property in Seattle which they were desirous of exchanging for certain property in Yakima valley owned by a man named Crumley. Respondent represented both parties to the transaction, and, after considerable preliminary negotiation, the following agreement was entered into between the parties:

"EXCHANGE AGREEMENT

"THIS AGREEMENT, made and entered into this second day of February, 1927, by and between R. H. Ben-

[1] Reported in 286 Pac. 849.

ton and Ivy Benton, his wife, of Seattle, Washington, hereinafter known as party of the first part, and C. V. Crumley, a widower, of Seattle, Washington, hereinafter known as party of the second part, and C. W. Weedin, of Seattle, Washington, hereinafter known as party of the third part, and F. E. Ollinger Company, who acts as agent for the first and second party, party of the fourth part, all of King county, Washington, Witnesseth:

"(1)   The first party is the owner in fee simple of the following described property, which in consideration of one dollar ($1) the receipt of which is hereby acknowledged, and also in consideration of the conveyance by the second party of the premises hereinafter described, and of such additional covenants as hereinafter mentioned, they have this day sold to the second party, lots three (3), four (4) and the west ninety feet of lots nine (9) and ten (10), in block seventy-five (75) of Woodlawn addition to the city of Seattle, King county, Washington.

"(2)   The second party is the owner in fee simple of the following described property, which in consideration of one dollar, the receipt of which is hereby acknowledged, and also in consideration of such conveyance by the first party, and of such additional covenants as are hereinafter mentioned, he has this day sold to the first party, the east one-half ($E\frac{1}{2}$) of the southwest one-fourth ($SW\frac{1}{4}$) of section thirty-two (32), township nine (9) north, range twenty-three (23) E. W. M., containing eighty acres, more or less, located in Yakima county, Washington, with all water rights appurtenant to the land, as well as all other improvements appurtenant to the premises.

"(3)   As such owners, they have each employed the fourth party as their agent or broker to bring them together to make such exchange, and it is agreed that this exchange has been brought about through the efforts of said fourth party.

"(4)   The premises to be conveyed by the first party are subject to the following incumbrances, which the second party assumes as part of the consideration: A tentative agreement as heretofore entered into be-

tween the first party and the third party for the construction of a building of the bungalow type, according to plans and specifications, of which a duplicate set of plans and specifications have been delivered to second party. Changes in the plans and specifications have been tentatively agreed upon, and it is understood and agreed that a new set of plans and specifications are to be drawn which shall be subject to the approval of the party of the second part. It is understood that party of the first part intends placing a mortgage on the premises in an amount not to exceed thirty thousand dollars ($30,000), with interest not to exceed seven per cent (7%) per annum, and repayable at the rate of not to exceed one hundred fifty dollars ($150) per month, together with interest. The premises otherwise to be free and clear of all incumbrances, except the said thirty thousand dollars ($30,000) at date of delivery of the completed building to party of second part.

"(5) The premises to be conveyed by second party are subject to an incumbrance of not to exceed ten thousand dollars ($10,000), consisting of a first mortgage of approximately eight thousand dollars ($8,000), due the Federal Land Bank of Spokane, Washington, and taxes, assessments, and other obligations to an amount of which, plus the first mortgage, shall not exceed ten thousand dollars ($10,000), all of which first party assumes.

"(6) Party of the third part agrees to construct the building heretofore referred to in paragraph four (4) in all respects as per plans and specifications to be approved by parties of the first, second and third parts, and to receive payment in full therefor from party of the first part, so that on completion and delivery of the property to party of the second part, there shall be no liens or obligations upon the said property except the thirty thousand dollars ($30,000) heretofore specified.

"(7) Abstracts or title insurance shall be furnished by first and second parties to their respective property on or before ten days from final approval of plans and specifications heretofore referred to. If

any defect render the title unmarketable, a reasonable time shall be given to remedy defects.

"(8) On approval of plans and specifications heretofore referred to, first and second parties agree to escrow proper conveyances to their respective properties and place same with a mutually agreed upon escrow agent.

"(9) Parties of the first and third parts agree to start the construction of the within mentioned building within ten days from the date of the approval of the plans and specifications by party of the second part, and it is further agreed that the building shall be completed and delivered to party of the second part, as herein provided, by or before one hundred and twenty (120) days from the date of starting construction.

"(10) It is expressly understood and agreed that the first and second parties are making this agreement upon their own knowledge and information gained from their own sources, that they have investigated the properties for themselves, are well satisfied to make this exchange, and that they have not or do not hereby make any representations of any facts concerning any of said property nor has any agent of any or either party made any such representations.

"(11) The fourth party having fully performed its part as agent or broker, the first party hereby agrees to pay to the fourth party a commission for this sale of $1,500, and the second party hereby agrees to pay to the fourth party a commission of $1,500 for said sale.

"The stipulations herein are to apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties."

Pursuant to this agreement, appellants made, executed and delivered their certain promissory note in the sum of fifteen hundred dollars, dated March 28, and due on or before six months after date, and this action was brought to recover on such note.

In the answer filed by appellants, they tacitly admit the execution of the note, claim that certain misrepresentations as to the condition of the Yakima property

were made to them, the misrepresentations which it is claimed were made touching upon the indebtedness due on the property, alleging that there was a larger amount of indebtedness due than was set forth in the exchange agreement; claiming also that there were other misrepresentations made as to money due from the Apple Growers' Association; that all of the instruments relating to the exchange, as well as the notes, were placed in escrow with respondent corporation; claiming that the respondent corporation had actively engaged in the fraud and deceit which they claim was practiced upon them; claiming that the deal was finally rescinded by reason of the fact that Crumley ultimately was unable to perform his part of the agreement. On the issues thus framed, the cause came on for trial, and from a judgment awarding recovery on the note this appeal follows.

The statement of facts, which we have carefully examined, discloses that, prior to making this deal and prior to the signing of the exchange agreement, appellants spent at least a day in an examination of the property; that they knew that the indebtedness against the property was in excess of ten thousand dollars before they signed the agreement, and that the opportunity was open for them to learn all of the facts from the Yakima Fruit Growers' Association which anyone could have learned at that time, and fails to disclose that Ollinger Company had or claimed to have any particular knowledge of the situation regarding the Yakima property. The record fails to show that the note in question was ever a part of any escrow agreement.

The trial court specifically found that as to respondent there had been no fraud or misrepresentation on the part of this corporation. The law is so well settled as to require no citation of authority that, where a

broker has produced a customer who is accepted by the other side and who enters into a binding and enforceable contract for the exchange or sale of property, he has earned his commission. In this particular case, the exchange actually took place, and the respective properties were deeded pursuant to the terms of the exchange agreement. Some five or six months thereafter, the parties got together, declared the deal off, and re-exchanged their properties. Under such circumstances, the broker is entitled to his commission.

"The authorities are practically unanimous in holding that unless the broker and his employer have expressly stipulated to the contrary the broker is entitled to his compensation upon the completion of the negotiations he undertook irrespective of whether or not the contract negotiated is ever actually consummated, so long as the failure to carry it through to a successful completion is not due to any fault of the broker." 4 R. C. L., p. 310, § 50.

A complete discussion of this question will be found in the note in 51 A. L. R., p. 1390, and the cases there cited practically all hold that under circumstances such as are here disclosed the commission has been earned by the broker.

When respondent obtained the written agreement heretofore set out, signed by both parties, and enforceable against each of them, there being nothing in the record to show any fraud or concealment on the part of Ollinger Company, respondent had done all it could do and its commission was earned.

Judgment affirmed.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.