[No. 28857. *En Banc.* June 10, 1943.]

W. HOWARD BLOOM, *Appellant*, v. CARL CHRISTENSEN et al., *Respondents.*[1]

[1]Reported in 138 P. (2d) 655.

*Crollard & O'Connor,* for appellant.

*Sam R. Sumner,* for respondents.

SIMPSON, C. J.—Plaintiff brought this action to recover an amount which he claimed was earned as a commission for the sale of real property belonging to the defendants. The case, tried to the court, resulted in a judgment for the defendants, and the plaintiff has appealed. The assignments of error challenge the findings of fact, conclusions of law, and the judgment of the trial court.

A statement of facts was not brought to this court. It is therefore necessary to ascertain whether the findings of fact sustain the judgment of dismissal.

The court's findings disclose the following facts: July 25, 1941, appellant, a licensed real estate broker, and respondents entered into a written agreement whereby respondents agreed to pay appellant a five per cent commission on the sale of their apartment house. The pertinent part of the agreement provided that appellant

". . . shall be authorized and empowered to sell said property for a period of thirty days from date, at the stipulated price of Twelve Thousand Six Hundred Fifty Dollars ($12,650.00). If the real estate agency shall sell said property for said price, or some lower price which said principal may authorize him to accept, the real estate agent shall receive a commission of five (5) per cent of the amount of the sale.

"IT IS FURTHER AGREED, that the seller shall deliver to the purchaser or cause to have delivered to the purchaser, an abstract or title insurance, and further a warranty deed, the property to be shown free and clear of all encumbrances as of the date of sale.

"Interest rate shall be five (5) per cent on the unpaid balance of the purchase price.

"Should this sale be made directly or indirectly by the said agency, the above agreed commission shall be paid."

Upon the same day appellant showed the property to one Evans, who expressed satisfaction and entered into a written contract with appellant and respondents and paid appellant one hundred dollars on the purchase price. The contract, called an earnest money receipt, provided:

"Received from James A. Evans and Lulah Evans One Hundred and no/100 Dollars on account of the purchase price of the following described real estate [description of property] . . .

"Total Purchase price is Twelve Thousand Six Hundred Fifty and No/100 Dollars ($12,650.00). Balance of 4,900.00 to be paid at signing of contract and the balance to be paid as follows: Seventy-five & No/100 Dollars on the first day of the month, starting with the month of Oct. 1, 1941, and seventy-five dollars ($75.00) on the first day of each and every month thereafter, until the unpaid purchase price together with interest at Five per cent, per annum, on the remaining balance, has been fully paid, all payments shall first apply to the account of interest and the balance to (if any) principal. Any multiple payments may be made at any payment date.

"Title is to be shown by abstract or Title Insurance Policy (either one or both successively,) certified to date by a responsible Abstract or Title Insurance Company furnished at the expense and option of the seller and 30 days allowed for examination.

"It Is Hereby Agreed that if title is not good and cannot be made good within reasonable time from receipt of written notice of any defect, this agreement is void, and the earnest money herein receipted for shall be refunded, but if title is good as shown by abstract or Title Insurance, and the purchaser refuses or neglects to comply with any of the conditions of this sale, then the earnest money herein receipted for may be forfeited as liquidated damages.

"The property is to be conveyed by contract of sale

and warranty deed free and clear of all encumbrances of every nature whatsoever, except as above noted, and building restrictions, zoning law or easements heretofore imposed on said property.

"Taxes and assessments that are a lien on the property, if not assumed by the purchaser, will be adjusted when the deal is closed.

"Any other encumbrances may, at the option of the seller or his agent, be paid out of the cash portion of the purchase price at the consummation of the sale.

"Rents, water and light, insurance and interest, if any are to be prorated as of date of delivery of deed or real estate contract.

"It Is Understood and Agreed that the agent is in no wise responsible for the delivery of this title, and this agreement is entered into subject to the approval of the owner thereof within 30 days.

"It Is Further Understood that there are no verbal or other agreements which modify or affect this contract.

"The consummation of the sale is to be made in the office of W. Howard Bloom & Co. 110 First Street, Cascadian Hotel Bldg. Wenatchee, Washington

"Time is the essence of this contract.

"Purchaser agrees to buy said property on above terms.

"James A. Evans        W. Howard Bloom & Co.
        Purchaser                    Agent
                          By W. Howard Bloom
            "Wenatchee, Washington, July 25, 1941.

"I hereby agree to the above sale and to all of the foregoing terms and conditions, and agree to pay W. Howard Bloom as agent, commission of 5% for services.

"In the event that the earnest money receipted for is forfeited, I agree that such forfeiture shall go to, and be retained by, the agent to the extent of the agreed commission, and the residue to the owners.

                    "Carl Christensen     Owner
                    Sallie Christensen    Wife"

Four days later, appellant visited Evans for the purpose of securing his signature to a formal contract embodying the terms of sale. Evans refused to sign the

contract upon the ground that he was ill with the "flu," disgusted with the climate, and that the forfeiture clause of the contract was unsatisfactory.

July 31, 1941, respondents, with appellant's approval, addressed a letter to Evans and his wife at their Wenatchee address, urging them to reconsider the matter. However, Evans had left the state, and this letter, after being forwarded to Wyoming, was returned to respondents unopened. Respondents thereupon consulted with appellant, who then secured Mr. Evans' address and wrote him at Monmouth, Illinois, urging him to reconsider his decision. In the meantime, respondents wrote to Evans August 30, 1941, acknowledged that they considered the former deal terminated and stated that, inasmuch as the thirty days allowed under the brokerage agreement with appellant had expired, they were at liberty to deal with Evans directly, and offered him the property for twelve thousand dollars. The offer was accepted in substance by letter received September 28, 1941, and the transaction for the sale of the property was closed November 29, 1941. During the month of September, and prior to the time respondents received a reply to their letter of August 30th, appellant showed the property to another prospect who made an offer to purchase the property at the original figure, but with a comparatively small initial payment. The offer was not acceptable to respondents because of the small cash payment proposed, but they did, in writing to appellant, set forth the terms they were willing to accept from the new prospect, which, except for the price, were more liberal than those finally accepted from Evans.

It is appellant's contention that he earned his commission at the time of the execution of the earnest money agreement, and that he is entitled to a commission of five per cent of the purchase price of $12,650, less the one hundred dollars retained by him. He

argues that the earnest money agreement is a binding, enforcible contract, and that by securing its execution he did all that was required of him.

Respondents, on the other hand, contend that the judgment is supported by the findings on two theories: First, that the earnest money receipt provided for the consummation of the prospective sale by the making of additional contracts and additional payments of money, and that the sale was never completed; second, that, after Evans decided not to purchase the property on July 29th, appellant abandoned any further effort to sell respondents' property to him.

It is the general rule that a broker is entitled to his commission when he produces a purchaser who is ready, able, and willing to purchase upon the terms required. This court has held to that effect in *Carstens v. McReavy*, 1 Wash. 359, 25 Pac. 471; *Arthur D. Jones & Co. v. Eilenfeldt*, 28 Wash. 687, 69 Pac. 368; and *Ollinger Co. v. Benton*, 156 Wash. 308, 286 Pac. 849. The following authorities adhere to that rule: 12 C. J. S., p. 188, Brokers, § 85; 8 Am. Jur., p. 1090, Brokers, § 174; *Kendrick v. Speck*, 67 F. (2d) 295; *Goss v. Broom*, 31 Minn. 484, 18 N. W. 290.

The rule applies even though the sale is not consummated by the owner or is consummated by him upon terms different from those stipulated in the brokerage agreement. *Barnes v. German Savings & Loan Society*, 21 Wash. 448, 58 Pac. 569; *Norman v. Hopper*, 38 Wash. 415, 80 Pac. 551; *Lawler v. Armstrong*, 53 Wash. 664, 102 Pac. 775; *Philips & Co. v. Langlow*, 55 Wash. 385, 104 Pac. 610; *Godefroy v. Hupp*, 93 Wash. 371, 160 Pac. 1056, L. R. A. 1918 E, 494; *Ollinger Co. v. Benton*, 156 Wash. 308, 286 Pac. 849; *Tarbell v. Bomes*, 48 R. I. 86, 135 Atl. 604, 51 A. L. R. 1386, 1394e.

In *Lawler v. Armstrong, supra*, an owner accepted five hundred dollars earnest money on a thirty thousand dollar contract to purchase in the following terms:

" 'We approve the above sale and agree to pay George Lawler $750 in case sale is consummated or ⅓ of earnest money in case same is forfeited, and covenant that we are the owners of the above described property in fee simple.' "

The purchaser defaulted and the owner instituted a suit for specific performance and secured a judgment for the full purchase price. This court recognized that the broker was entitled to his commission and held that the sale was consummated as required by the brokerage agreement. In the opinion several cases from outside jurisdictions are cited which hold that the procuring of an enforcible contract entitles the broker to his commission. We refer particularly to *Goss v. Broom,* 31 Minn. 484, 18 N. W. 290, from which we quoted as follows:

" 'He [the agent] became entitled to the stipulated compensation when he had done all that he was empowered to do. This he did by negotiating a sale and making a contract binding the purchaser to a performance of the terms prescribed.' "

In *Ollinger Co. v. Benton, supra,* the broker secured a contract of exchange and the papers were placed in escrow, the contract was later rescinded and another arrangement made. This court upheld the broker in his claim for a commission, saying:

"The law is so well settled as to require no citation of authority that, where a broker has produced a customer who is accepted by the other side and who enters into a binding and enforceable contract for the exchange or sale of property, he has earned his commission. In this particular case, the exchange actually took place, and the respective properties were deeded pursuant to the terms of the exchange agreement. Some five or six months thereafter, the parties got together, declared the deal off, and re-exchanged their properties. Under such circumstances, the broker is entitled to his commission.

" 'The authorities are practically unanimous in holding that unless the broker and his employer have ex-

pressly stipulated to the contrary the broker is entitled to his compensation upon the completion of the negotiations he undertook irrespective of whether or not the contract negotiated is ever actually consummated, so long as the failure to carry it through to a successful completion is not due to any fault of the broker.' 4 R. C. L., p. 310, § 50."

The earnest money agreement was a valid contract enforcible by a suit for specific performance, and was not in any sense an option to purchase. *Newell v. Lamping,* 45 Wash. 304, 88 Pac. 195; *Asia Inv. Co. v. Levin,* 118 Wash. 620, 204 Pac. 808, 32 A. L. R. 578; *Hamilton v. Norris,* 144 Wash. 326, 258 Pac. 4.

Respondents contend that the earnest money agreement provided for further acts on the part of the broker and contemplated that he would "consummate" the sale before earning his commission; and they point to the fact that the agreement used the terminology that the "consummation of the sale" take place in appellant's office. They base their contention upon our holding in *Sams v. Olympia Holding Co.,* 153 Wash. 254, 279 Pac. 575. The contract construed in that case and the ones present here are entirely different. In that case, we held unenforcible a brokerage agreement which entitled a broker to a commission "when the sale is completed." The real estate agent secured a purchaser who agreed to but did not complete the purchase of the property upon the terms set out in the agreement between the owner and the agent. The contracts in this case, however, make different provisions. In the brokerage agreement, respondents agreed to pay a commission "if the real estate agency shall sell said property," and in the earnest money agreement they stated,

"I hereby agree to the above sale and to all of the foregoing terms and conditions, and agree to pay W. Howard Bloom as agent, commission of 5% for services."

In the first contract, they agreed to pay a commission only when the sale was consummated, and in the last agreement respondents approved the contract of sale secured by appellant.

We hold that these commitments entitled the appellant to recover his commission.

Respondents contend that appellant abandoned the deal upon the purchaser's declaration of forfeiture, and point to his activities subsequent to the time that Evans refused to sign the contract. There was nothing inconsistent with his activities and his contention that he was entitled to his commission. He only endeavored to assist his principal in securing the money which was due him from Evans and to secure another purchaser. As we view it, this could not be construed in any way as an abandonment of his rights to secure his commission.

The fact that Mr. Evans bought the property at a figure within a few hundred dollars of the original price is definite proof of his ability to buy.

The judgment will therefore be reversed and the case remanded, with instructions to the trial court to enter a judgment in favor of the appellant as demanded in his complaint.

MILLARD, BLAKE, JEFFERS, MALLERY, and GRADY, JJ., concur.

BEALS, J. (dissenting)—In my opinion, the earnest money receipt which the parties signed, and which is set forth in the majority opinion, did not embody the complete agreement between the parties. The document thrice refers to a contract to be later executed. The second reference to such a contract reads as follows: "The property is to be conveyed by contract of sale and warranty deed . . . ." The receipt itself refers to the following matters which were to be subject to later agreement:

"Taxes and assessments that are a lien on the property, if not assumed by the purchaser, will be adjusted when the deal is closed.

"Rents, water and light, insurance and interest, if any, are to be prorated as of date of delivery of deed or real estate contract."

These provisions themselves suggest latent ambiguities and occasion for further agreement.

In determining whether or not the receipt was intended as the final agreement between the parties, a court should consider whether such a construction of the document is reasonable.

The receipt is completely silent as to certain matters of considerable importance to both vendor and vendee. It is impossible to believe that either party would have been content with the terms of the receipt as to some of these items. In the first place, the receipt provides for the payment of over seven thousand dollars of the purchase price in monthly installments of seventy-five dollars each, but contains no provision for forfeiture of the contract if the installments are not paid. Apparently all the vendor could have done would be to institute suit for each payment as it fell due. The vendor would have been necessarily much concerned as to his rights to enforce payment of the installments. On the other hand, the receipt does not provide that the vendee shall be entitled to enjoy possession of the premises. This court has several times held that, unless an executory contract of sale of real estate provides that the vendee shall be let into possession, the vendor may remain in possession until the purchase price is fully paid.

The receipt makes no reference to the matter of maintaining fire insurance on the property, nor does it provide for the payment of taxes, assessments, or liens, which may accrue subsequent to the signing of the contract for which the receipt provides.

There can be no question but that the parties con-

templated the execution of a contract of sale, and regarded the receipt merely as preliminary, as immediately upon the signing of the receipt appellant caused a formal contract to be prepared, and presented the same to Mr. Evans, who promptly objected to some of the terms thereof. Evidently appellant considered that the receipt was merely a preliminary agreement in the nature of an option, as, after appellant had presented to Mr. Evans the formal contract which he had prepared, appellant telephoned respondents, stating "that he guessed the deal was off; that Evans was sick and disgusted with the climate, and was going to leave the country." Later, respondents wrote Mr. and Mrs. Evans, advising them that the property in question was a good buy, and that "the deal is still open for you."

The record convinces me that appellant considered that the proposed agreement had been completely abandoned, and was content that such be the case, Mr. Evans having clearly indicated that he considered that he had forfeited the one hundred dollars which he had paid to appellant, and which appellant would retain, according to the terms of the receipt.

During the month of September, appellant showed the property to another prospective purchaser, and submitted to respondents an unsigned proposed earnest money receipt, stating terms which were unsatisfactory to respondents, who in writing stated other terms which they would accept. If appellant's position in the case at bar is correct, it would seem that he might have been in a position to claim two commissions from respondents.

Decided cases concerning questions involving the law of contract are legion, but certain basic propositions are well established. In 17 C. J. S., title "Contracts," p. 390, § 49, is found the following:

"Mere preliminary negotiations as to the terms of an agreement do not constitute a contract. A complete

contract is effected generally only by an agreement as to all of the terms which the parties intend to introduce into the contract, and, where such is the intention of the parties, by the execution of a formal written instrument embodying those terms.

"The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement. The mere fact, however, that a contract is executory in some of its requirements and details does not render it a preliminary agreement rather than a complete contract."

In 1 Restatement of the Law of Contracts, p. 33, § 26, entitled "Existence of Contract where Written Memorial is Contemplated," is found the following comment:

"a. Parties who plan to make a final written instrument as the expression of their contract, necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then fulfilled all the requisites for the formation of a contract. On the other hand, if the preliminary agreement is incomplete, it being apparent that the determination of certain details is deferred until the writing is made out; or if an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract."

In the case of *Scholtz v. Northwestern Mut. Life Ins. Co.*, 100 Fed. 573, the circuit court of appeals for the eighth circuit, in considering the binding effect of a preliminary agreement, used the following language:

"It may be conceded that an agreement to enter into a lease will neither be enforced in equity nor at law if it appears from the face of the agreement that any of the terms of the lease, no matter how unimportant they may seem to be, are left open to be settled by future conferences between the lessor and lessee. In such cases there is no complete agreement; the minds of the parties have not fully met; and, until they have, no court will undertake to give effect to those stipulations that have been settled, or to make an agreement for the parties respecting those matters that have been left unsettled."

In the case of *A. O. Anderson & Co. v. Texas Co.*, 279 Fed. 76, the circuit court of appeals for the second circuit, in determining whether or not a paper was in fact a charter party, or merely an agreement to enter into a charter party, or neither, said:

"In the last analysis, however, the reliable test is whether within the paper there is embodied everything which the parties have agreed to do, assuming in that hypothesis, of course, that the other necessary elements of a contract exist."

In the case of *Esselstyn v. Meyer & Chapman State Bank,* 63 Mont. 461, 208 Pac. 910, the supreme court of Montana quoted with approval from the case of *Sibley v. Felton,* 156 Mass. 273, 31 N. E. 10, the following:

" 'It is clear that on some things the minds of the parties had met, and on others they had not. The scheme or plan was not completed, and until it was there was no complete or final contract. Until then it was provisional and incomplete, and failure to agree upon the details or upon a complete plan would render all the preliminary agreements void.' "

The supreme court of Pennsylvania, in the case of *Upsal Street Realty Co. v. Rubin,* 326 Pa. 327, 192 Atl. 481, an action for damages based upon an alleged breach of an agreement to enter into a lease, said:

"In the instant case it is clear that the 'preliminary agreement' labeled an 'Application for Lease' was incomplete. The rental item alone discloses that.

Whether the sum of $3,465 as rental was to be paid in advance or at the end of the term or in quarterly or monthly installments, and if in installments whether these were to be *in advance* or otherwise, does not appear. The matter of decoration and selection of colors was also incompletely referred to. The word 'redecorate' has a wide variety of meanings."

In the case of *Rosenfield v. United States Trust Co.*, 290 Mass. 210, 195 N. E. 323, 122 A. L. R. 1210, the supreme judicial court of Massachusetts, in deciding an action wherein the plaintiff sought damages for breach of an agreement to lease, said:

"Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled. [Citing cases] Said fact does not conclusively establish such intention. [Citing cases] If all the material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms. [Citing cases] A failure of the parties to agree on material terms may not merely be evidence of the intent of the parties to be bound only in the future, but may prevent any rights or obligations from arising on either side for lack of a completed contract."

The negotiations between the parties to this action concerned real estate, and of course any contract for the conveyance thereof must, under the statute of frauds, be in writing. That, however, does not change the basic law of contract as applied to agreements between the parties, whether the subject matter of such agreement might be within the statute of frauds or not.

In the case of *Stanton v. Dennis*, 64 Wash. 85, 116 Pac. 650, it was held that the parties had not completed a contract for the carpentry work on a building. A written bid was submitted to a subcontractor during the course of construction of the building, offering to

perform the carpentry work for a specified price. The bid contained a notation, "Formal contract to follow." The person to whom the bid was submitted signed his name after the word "Accepted" on the contract, and returned the same to the bidder. Later, the subcontractor refused to give the work to the bidder, whose assignee sued for damages. The superior court entered judgment in favor of the plaintiff, and on appeal the judgment was reversed and the action dismissed. In the course of the opinion, this court said:

"The principal question suggested by the record is whether the writing containing the bid of Dunnavant and the acceptance thereof by the appellant constituted the completed contract between the parties, or was it an agreement settling some of the terms of a contract to be entered into later. The face of the writing, it is at once apparent, indicates that it was intended as the latter rather than the former. After specifying certain particulars, it expressly provides that a formal contract is to follow. If the writing itself was intended as the completed contract, there would have been no need for this proviso. A contract complete in itself does not need the sanction of another contract. Again, the contract, when tested by the surrounding circumstances, seems incomplete. It refers to work of a particular character in a described building, yet it specifies no time when the work shall be begun. when it shall be completed, the character of the work that shall be performed, or when payment for the work shall be made. While the law in such cases implies certain conditions, namely, that the work shall be commenced and completed within a reasonable time after demand, shall be performed in an ordinary skillful manner, and shall be paid for within a reasonable time after its completion, it is apparent that these conditions might not satisfy the appellant."

In the case of *Jammie v. Robinson,* 114 Wash. 275, 195 Pac. 6, which was an action to rescind a contract because of alleged fraud, this court, in affirming a judgment in favor of the plaintiff, quoted from the case of *Stanton v. Dennis, supra,* and, in the course of the opinion, said:

"It seems thoroughly apparent, therefore, that since the parties contemplated a formal and complete contract, they did not contemplate that the letters and telegrams constituted a completed contract. There had been, therefore, no meeting of minds when the parties met together in Ellensburg after the exchange of the letters and telegrams."

In the cases of *Empson Packing Co. v. Lamb-Davis Lbr. Co.*, 112 Wash. 75, 191 Pac. 833; *Pennington & Co. v. Hedlund Box & Shingle Co.*, 116 Wash. 292, 199 Pac. 235; and *Federal Land Bank of Spokane v. Egan*, 195 Wash. 330, 80 P. (2d) 813, this court has discussed somewhat similar questions.

The findings of fact entered by the trial court are complete and in considerable detail.

I am convinced that both appellant and respondents, with good reason, considered the proposed sale to Mr. Evans as abandoned by him, and that such abandonment was acquiesced in by the parties to this action.

I agree with the majority in holding that, if the earnest money receipt constitutes a binding contract between the parties, which a court would specifically enforce as between respondents and Mr. Evans, in view of the fact that the latter by later purchasing the property demonstrated that he was financially able to complete the deal, appellant is entitled to receive his commission, but I am of the view that the earnest money receipt does not constitute a contract which either party thereto could specifically enforce by an appropriate action.

By their conduct, both appellant and respondents showed that they considered that the earnest money receipt which the parties had signed was not a binding, enforcible contract, and the findings do not indicate that either party ever acted upon any other supposition. Certainly, if the earnest money receipt was in fact binding upon respondents, and subject to specific performance in an action by Evans against them, re-

spondents would have been greatly surprised to discover that they were bound to execute a contract of sale providing for payment of over half the purchase price of the property in monthly installments, for nonpayment of which they would have had no right whatever to forfeit the contract and repossess the property.

When Mr. Evans repudiated the deal, he stated in no uncertain terms that the negotiation was off, and that appellant "could do what he wanted" with the hundred dollars which Evans had paid.

Whatever meaning the courts might give to the words "may be forfeited as liquidated damages," contained in the receipt, it is evident that all the parties to the deal, including appellant, considered that, by abandoning this payment to appellant, Evans and respondents were released from any obligation which might follow the signing of the earnest money receipt.

One can understand appellant's annoyance when he discovered that respondents had later sold the property to Evans, but I am aware of no theory in the nature of a *quantum meruit* by which appellant may recover in this action. The sale was made after the expiration of the time limit fixed in the agreement.

I shall now discuss three decisions of this court which are cited by the majority in support of the holding that the earnest money receipt constitutes a contract which the courts should specifically enforce.

In the case of *Newell v. Lamping*, 45 Wash. 304, 88 Pac. 195, this court affirmed a decree of the superior court directing specific performance of the following writing:

"Nov. 25, 1905.

"Received of A. B. Newell ($50) fifty dollars as earnest money to be applied on purchase of lot 1, block 1, and lots 1 to 10 inclusive, block 10, Elmore Addition, purchase price to be $150.00 per lot and conditioned on furnishing a good and sufficient title within 30 days from date.

"(Signed) Geo. B. Lamping."

While the contract is very brief and informal, it was held complete, and certainly it leaves nothing open to further agreement between the parties. It does not contemplate any further contract, save the delivery of a deed to the property. In my opinion, it is not here in point.

In the case of *Asia Inv. Co. v. Levin,* 118 Wash. 620, 204 Pac. 808, 32 A. L. R. 578, this court affirmed a decree of the superior court directing specific performance of an agreement to sell real estate, entered in favor of defendant on a cross-complaint. The plaintiff contended that the agreement between the parties was not a contract of purchase and sale, but merely an option. This court held that the agreement between the parties was not an option, but was in law a contract of purchase and sale. The agreement is set forth in the opinion, and is apparently complete, leaving nothing to be subsequently agreed upon by the parties. The principal contention in the case was that, by the terms of the agreement, the defendant's right was limited to forfeiture of the earnest money paid. The agreement was complete, and contemplated no further agreement, other than the delivery of a deed upon payment of the balance of the purchase price in cash. The case is not here in point.

In the case of *Hamilton v. Norris,* 144 Wash. 326, 258 Pac. 4, this court affirmed a decree of the superior court directing specific performance of an agreement to sell real estate. This case is more nearly in point than the others referred to, but it seems to me that the opinion states a case which may be distinguished from the case at bar. If the case cannot be distinguished, I think that it was wrongly decided, and should be reversed. An earnest money receipt was signed by the purchaser, and approved by the owners. Quoting from the opinion, this receipt recited

" . . . that the purchase price of the real estate is $2,000, of which the sum of $250 was then and there

paid and acknowledged, the balance to be paid at the rate of twenty-five dollars per month, with interest as specified, title to be shown by title insurance policy, and the property to be conveyed by contract, free and clear of all encumbrances of every nature whatsoever, except building restrictions, zoning law or easements imposed on the property."

The purchaser tendered performance and demanded a contract. The defendants contended that the agreement was executed conditionally, and never became binding upon them. It nowhere appears in the opinion that the earnest money receipt left any terms and conditions to be subsequently agreed upon by the parties. The defendants contended that the document which they signed was not to be delivered to the purchaser unless he agreed to assume certain assessments, but it was not contended that there was any matter left open for subsequent negotiations and agreement. The plaintiff tendered performance, standing upon the terms of the earnest money receipt, and suggesting no change therein. As stated by the court, the plaintiff accepted without question the agreement as made. The superior court found, and the finding was approved by this court, that the earnest money receipt was not conditionally delivered. From the opinion it appears that the contract of sale called for by the earnest money receipt required no negotiation as to the terms to be included therein, and left the agreement which the parties signed in the same position it would have been in had the same called for delivery of a deed. It would seem that questions suggested in this dissent were not raised, though some were inherent in the case. The opinion is authority only upon the questions decided by this court.

In the case at bar, it is my opinion that the earnest money receipt left certain matters for later adjustment, and that, for this reason, the *Norris* case is not here controlling. It also appears that in the *Norris*

case the purchaser raised no question as to any dispute on the terms of the contract, while in the case at bar, it appears that Evans objected to some of the terms of the contract which was tendered to him for signature, thereby indicating that at least some matters had not been agreed upon.

I am also of the opinion that both appellant and respondents acquiesced in Mr. Evans' refusal to complete the deal, and accepted the down payment as liquidated damages. In this connection, the following paragraph quoted from the opinion in the case of *Asia Inv. Co. v. Levin, supra,* is in point:

"Of course, it is to be recognized that, if the vendor, by his conduct, has so acted that he has accepted the provision for liquidated damages as being the full measure of his rights, he cannot then be allowed to compel performance. In this case the record does not show that there has been any such conduct on the part of the respondent as to indicate that he had bound himself to the retention of the $500 as the full measure of his rights under the contract."

It would seem that it might well have been contended on the trial that, by well-recognized custom in this jurisdiction, such earnest money receipts as that here in question are considered as options, and not as binding contracts. I suggest this matter merely to reserve my opinion thereon, if the question be later presented.

I am convinced that the *Norris* case is not here controlling, and that the judgment of the superior court was right and should be affirmed. I accordingly dissent from the conclusion reached by the majority.

STEINERT and ROBINSON, JJ., concur with BEALS, J.