[No. 575-3.    Division Three.    July 26, 1973.]

GREGOR H. AGRANOFF et al., *Appellants*, v. FERDIE JAY et al., *Respondents*.

*Efrem Z. Agranoff* and *E. Edward Allan* (of *Moe & Allan*), for appellants.

*K. D. Peterson* (of *Milne & Peterson*), for respondents.

McINTURFF, J.—This is an action by plaintiffs against the defendant real estate broker, contending: (1) defendant breached a fiduciary relationship owed by a real estate broker to his client by negligently failing to protect the sellers' interest in not preparing and executing a rental agreement when giving purchaser possession prior to clo-

sing; (2) defendant was guilty of unauthorized practice of law by preparing an earnest money agreement in a manner which did not rise to the standard of care attributable to an attorney; and (3) defendant was guilty of malicious prosecution when he filed an involuntary petition in bankruptcy maliciously and without probable cause.

Defendant counterclaimed for a $2,700 real estate commission. The trial court dismissed the plaintiffs' causes of action, entered findings of fact and conclusions of law adverse to plaintiffs, and granted judgment for $1,500 on the defendant's counterclaim, less a setoff of $544.70 because of defendant's failure to comply with CR 36. Both parties appeal.

Prior to March 1970, plaintiffs owned and operated a hotel located in Soap Lake, Washington. Defendant Ferdie Jay, d/b/a Tri Basin Realty, showed the hotel property to Rosetta Hazan. On March 11, 1970 he prepared an earnest money agreement which was signed by the parties. The earnest money agreement provided for a total sales price of $45,000, with a note of $5,000 given as downpayment. It further provided that Mrs. Hazan would be entitled to possession on closing of the real estate transaction. However, prior to closing, Mrs. Hazan took possession of the premises in April 1970 with consent of plaintiffs, but in opposition to defendant's advice, and remained on the premises until November 1970 without paying any rent. No rental or occupancy agreement was prepared or suggested by defendant Jay. The real estate transaction failed to close, and plaintiffs commenced this action in February 1971.

After the sale failed to close on November 10, 1970, plaintiffs transferred the hotel property by deed to their son for love and affection. On March 8, 1971, without a full investigation into the assets of plaintiffs, and upon the advice of counsel, defendant filed an involuntary petition in bankruptcy, listing plaintiffs as creditors. The petition in bankruptcy was dismissed upon motion for summary judgment on May 12, 1971.

Thereafter plaintiffs amended their complaint and al-

leged as a further cause of action that the filing of the involuntary petition in bankruptcy was done maliciously, intentionally and without probable cause. Defendant's answer denied the essential elements of plaintiffs' amended complaint, and counterclaimed for a realtor's fee of $2,700.

This is primarily a factual appeal. Plaintiffs assign as error four findings of fact entered by the trial court, the conclusions of law based thereon, and the refusal to enter six proposed findings. The appellate issue raised by these assignments of error concerns whether there is substantial evidence to sustain the findings. We have read the record and decide that the findings as entered by the trial court are supported by substantial evidence. *See Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959); *see also Wells v. Scott*, 75 Wn.2d 922, 454 P.2d 378 (1969). We have reviewed pertinent Washington cases and conclude that the findings of fact taken as a whole sustain the challenged conclusion of law. *Cf. Hollingbery v. Dunn*, 68 Wn.2d 75, 411 P.2d 431 (1966).

Further, there is no error in the trial court's failure to enter plaintiffs' proposed findings of fact. Since there is substantial evidence to support the findings entered by the trial court we conclude that those findings cover all the material issues. There is no reversible error in failing to enter plaintiffs' proposed findings.

The next contention of plaintiffs concerns discovery.

ISSUE: Whether a list of witnesses to be called at trial is subject to discovery under CR 26 (b) (1).

In August 1971 plaintiffs mailed written interrogatories to the defendant. Interrogatory No. 16 requested defendant to

please give a complete list of all witnesses you intend to call upon the trial of this matter, giving their complete names, addresses, a brief statement as to what each witness will testify to. This interrogatory is intended to extend to all witnesses known to you or to your attorney, and shall be considered a continuing interrogatory.

To this interrogatory the defendant sent the following an-

swer: "The foregoing is within the purview of the attorney's work product rule, and is not a proper subject for discovery."

At trial, plaintiffs' counsel made a motion to exclude and prohibit witnesses from testifying because their names were not disclosed pursuant to the above interrogatory. However, the trial court allowed the witnesses to testify.

CR 33 (b) provides as follows:

Interrogatories may relate to any matters which can be inquired into under Rule 26 (b), . . .

CR 26 (b) (1) provides in part as follows:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . including . . . the identity and location of persons having knowledge of any discoverable matter.

Essentially, counsel contends that they are entitled to a list of the witnesses intended to be called by the opposing party at the trial. Authorities distinguish between being required to disclose the names and addresses of those persons to be called as witnesses at the trial of the cause, and those who have knowledge of facts relevant to a cause of action or defense.

Discovery of witnesses having knowledge of facts relevant to the lawsuit is apparently available under Federal Rules of Civil Procedure 26 (b) and 33, and state counterparts; nevertheless, it is also the view of most of the cases that discovery of witnesses whom the opposing party intends to call *at the trial* of the cause is *not* available under the applicable rules, although there is some recognition of the right to discover the identity of prospective witnesses, in some circumstances at least.

(Footnotes omitted. Italics ours.) 19 A.L.R.3d 1114, 1116 (1968).

Although the majority of jurisdictions would only allow the names of witnesses having knowledge of the facts, as opposed to names of witnesses to be called at trial, the states of Arizona, Michigan, Missouri, New Jersey, Penn-

sylvania and California grant the right to acquire the names of witnesses to be used at the trial. 19 A.L.R.3d 1114 (1968).

The leading case in our state on this subject is *Sather v. Lindahl*, 43 Wn.2d 463, 261 P.2d 682 (1953). The plaintiff 4 days before trial, answered, "Not that I know of," in response to the question, "Do you know of any witnesses to this accident?" The plaintiff in fact knew of four or five witnesses who testified at trial. The court said at page 465:

> When, after denying knowledge of witnesses which he in fact had, a litigant produces those witnesses at the trial, the adverse party should object to their being permitted to testify and, if they are permitted to testify, should move that their testimony be stricken. The trial judge can sustain such an objection and refuse to permit the witness to testify or can order his testimony stricken; or he can grant a continuance to give the surprised party an opportunity to investigate the witness and secure rebuttal testimony; and it is possible that, under circumstances in which no other relief or penalty could remedy the situation created by the deception, he could grant a mistrial.

The court infers, on page 466, that the alternative suggested should be used "before resorting to the drastic and costly remedy of a mistrial."

We must keep uppermost in our minds that the fundamental reason for our judicial system is justice, which we attempt to reach by searching for the truth under a system of fairness. The courtroom is not a ball park, nor the trial a ball game. The trial is serious and the rules governing that search for truth are to be so treated. *See* 47 Wash. L. Rev. 439 (1972).

The criminal law has recognized the necessity of providing each party with a list of witnesses they intend to use at trial. RCW 10.37.030. However, under CR 26(b)(1) one can only discover the identity and locations of persons having knowledge of relevant facts, and not the names of witnesses to be called at trial. 3A L. Orland, Wash. Prac. 539 (2d ed. 1968). There is some indication that Washing-

ton is tending toward allowing the names of witnesses to be used at trial to be a part of pretrial discovery.

The rules relative to discovery were designed to avoid surprise in trials, and to secure more perfect justice. Litigants and counsel should comply with these rules with scrupulous care. With the knowledge of the problem which plaintiff now has, we feel no doubt plaintiff will give adequate notice of the *witnesses to be called*.

(Italics ours.) *Peacock v. Piper*, 81 Wn.2d 731, 739, 504 P.2d 1124 (1973). However, the rules of discovery in our state do not yet require disclosure of the names of witnesses a party *intends to call* at trial. We, therefore, must hold that the plaintiffs' request for a "list of all witnesses you intend to call 'upon the trial'" is not a proper subject for discovery, and therefore the court did not err in allowing the defendant's witnesses to testify.

Also, the contention that the list of witnesses, etc., was within the "work product" rule is without merit. *See Borse v. Superior Court*, 7 Cal. App. 3d 286, 86 Cal. Rptr. 559 (1970); Annot., 35 A.L.R.3d 377, 433 (1971); Annot., 19 A.L.R.3d 1114 (1968).

The next contention involves the counterclaim of the defendant. The $5,000 earnest money under the real estate agreement was given in the form of a promissory note which was accepted by the plaintiffs. The sum of $3,000 cash was paid to the escrow agent as part of the $5,000. In July 1970 a suit was commenced against purchaser Hazan on the promissory note and for specific performance. The suit was subsequently settled in January 1971, and a compromise judgment was entered for $6,000.

Defendant contends that the court erred in finding that $3,000 earnest money was paid in by Hazan, and then subsequently concluding that $1,500 would be allowed the defendant as his real estate commission, the $1,500 being one-half the actual money paid in by Hazan as earnest money.

The earnest money agreement provides for a commission

of $2,700, and in the event the earnest money was forfeited it would be apportioned to the seller and agent equally.

██ The law is certain and is stated in *Dryden v. Vincent D. Miller, Inc.,* 56 Wn.2d 657, 660, 354 P.2d 900 (1960), as follows:

> We have held that, when a real-estate broker has procured a prospective purchaser who is accepted by the seller, and the seller promises to pay the broker a certain commission for services rendered, the broker has earned the commission, and the promise to pay it may be enforced.

(Citations omitted.)

In the instant case plaintiffs accepted the sale as set out and agreed to pay $2,700 for services, or if the contract was forfeited, one-half the amount of the earnest money. The earnest money was $5,000, and therefore defendant, on his cross-appeal, is entitled to $2,500 rather than the $1,500 awarded by the trial court.

Plaintiffs contend that after costs of suit, to arrive at the settlement of $6,000 they cleared only $2,048. We find the argument that only one-half of the *net* amount acquired on the forfeiture of the contract as a basis for the commission computation without merit. The contract does not mention net amount but speaks only of the earnest money forfeited to be apportioned equally between the agent and the seller.

The last contention concerns CR 36. (Request for admissions.) Prior to trial plaintiffs requested defendant to admit that it was the accepted standard of practice in the real estate business for a broker to prepare and have executed a rental or occupancy agreement when the purchaser was to take possession of the premises prior to closing. Defendant refused to admit plaintiffs' requested admission.

Defendant, on his cross-appeal, contends the court erred in allowing reasonable expenses under CR 37(c)[1] because

---

[1]"Expenses on Failure to Admit. If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay

defendant denied a request for admissions served by the plaintiffs, the denial being refuted by defendant. Therefore, the court allowed expenses of $544.70,[2] reimbursing the plaintiffs for costs of attempting to prove the facts requested be admitted. We find the court did not abuse its discretion in allowing reasonable expenses of $544.70.

Judgment of the trial court dismissing the first and second causes of action of the plaintiffs is affirmed. The judgment of the trial court granting judgment against the plaintiffs for $1,500 is modified to be a judgment for defendant against plaintiffs in the amount of $2,500, less the setoff of $544.70 granted by the trial court.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied August 16, 1973.

Review denied by Supreme Court September 25, 1973.

him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe the fact was not true or the document was not genuine, or (4) there was other good reason for the failure to admit."

[2] Costs $44.70; witness fees $200; attorney's fee $300.