[No. 935-3. Division Three. January 10, 1975.]

JAMES S. BLACK & Co., *et al., Respondents,* v. P & R Co., *et al., Appellants.*

*Lawrence W. Thayer* (of *Brown & Thayer*), for appellants.

*Wm. F. Nielsen* (of *Hamblen, Gilbert & Brooke, P.S.*) and *Paul A. Clausen* (of *Clausen & Gemmill*), for respondents.

McINTURFF, J.—This is an action by two real estate brokers, hereafter referred to as plaintiff, who contend that the defendant landowners owe them certain commissions for finding a tenant for their property. There is no evidence of a commission agreement; however, paragraph 26 of the lease provides:

COMMISSION

26. Lessor agrees that James S. Black & Co. is entitled to the payment by Lessor of a fee for negotiating this lease in the amount fixed by the commission schedule of the Spokane Real Estate Board in effect on the date hereof. *This rate is six percent (6%) of the gross rental payable as rent is collected.*

(Italics ours.)

The term of the lease was for 10 years commencing on June 15, 1969, and ending on June 14, 1979. Through January of 1972 the defendant received rental payments from the lessee and forwarded the correct brokerage commission to plaintiffs. On January 28, 1972, lessor and lessee, without prior knowledge or consent of plaintiff, entered into a contract rescinding the lease. Defendant received $10,000 in consideration for releasing the lessee from all obligations under the lease and tendered 6 percent of the $10,000 to the plaintiff, which was refused.

First, is the statement in the lease agreement, "This rate is six percent (6%) of the gross rental payable as rent is collected," ambiguous? The plaintiff contends that paragraph 26 is not ambiguous and provides that a commission is to be paid; that it provides for the amount of payment (*i.e.*, 6 percent of the gross rentals received over the 10 years of the lease); and that it provides for the method of payment (*i.e.*, payable as rent is collected).

Defendant also agrees that paragraph 26 is unambiguous but interprets it differently than plaintiff. Defendant's ar-

gument is that plaintiff would have been entitled to the brokerage commission in the amount of 6 percent of the gross rentals payable over the entire term of the lease, except for the fact that James S. Black & Co. added the words "as rent is collected," thus limiting the brokerage commission to 6 percent of only the rent collected. Since there are no more rentals receivable under the lease because it was rescinded, there is no more commission of 6 percent of those rentals payable to the plaintiff.

 In construing written contracts, our court has consistently applied the following basic rules: (1) the intention of the parties must control; (2) intent must be ascertained from reading the contract as a whole; and (3) where the language used is not ambiguous, ambiguity will not be read into the contract.[1]

Plaintiff and defendant agree that the language involved is unambiguous, and the fact that they do not agree upon the proper construction of the language does not make it ambiguous.[2] Applicable words of wisdom were stated by the court in *Carnation Lumber & Shingle Co. v. Tolt Land Co.,* 103 Wash. 633, 639, 175 P. 331 (1918):

> The first and best resort in the construction of contracts is to put oneself in the place of the parties at the time the contract was executed—to look at it in prospect rather than in retrospect—for, when money disputes have arisen, the prospective is apt to be clouded by the unexpected chance of gain or self-interest.

Further, in *Largent v. Ritchey,* 38 Wn.2d 856, 859-60, 233 P.2d 1019 (1951):[3]

> There is, after all, no hard and fast rule against applying common sense to situations of this kind. As said in 12 Am. Jur. 754, Contracts, § 231:

---

[1]*Wise v. Farden,* 53 Wn.2d 162, 167, 332 P.2d 454 (1958); *Dixon v. Gustav,* 51 Wn.2d 378, 381, 318 P.2d 965 (1957).

[2]*Needles v. Kansas City,* 371 S.W.2d 300, 304 (Mo. 1963).

[3]*Accord, In re Olympic Nat'l Agencies, Inc.,* 74 Wn.2d 1, 4, 442 P.2d 246 (1968) (quoted with approval); *see* 1 A. Corbin, *Contracts* § 95 n.4, at 396 (1963).

"That interpretation should be adopted which, under all the circumstances of the case, ascribes the most reasonable, probable, and natural conduct to the parties. Business contracts must be construed with business sense as they naturally would be understood by intelligent men of affairs and in the same sense as is uniformly attached to them by the business world." (Quoted with approval in *Carroll Construction Co. v. Smith*, 37 Wn. (2d) 322, 223 P. (2d) 606.)

■ As stated in *F.E. Ollinger Co. v. Benton,* 156 Wash. 308, 312-13, 286 P. 849 (1930): [4]

> The law is so well settled as to require no citation of authority that, where a broker has produced a customer who is accepted by the other side and who enters into a binding and enforceable contract for the exchange or sale of property, he has earned his commission. In this particular case, the exchange actually took place, and the respective properties were deeded pursuant to the terms of the exchange agreement. Some five or six months' thereafter, the parties got together, declared the deal off, and re-exchanged their properties. Under such circumstances, the broker is entitled to his commission.

Under the basic common rules set out above, that is, (1) looking at the contract prospectively as opposed to retrospectively, (2) applying common business sense, and (3) the rule of law that a broker has earned his entire commission when he has produced a purchaser who is accepted by the seller and who entered into an enforceable contract, we encounter no difficulty in reaching the same conclusion as did the trial court, *i.e.*, that the 6 percent commission was based on the gross rental, payable over the 10-year period in 120 monthly payments.

Since the total commission had been earned at the time the contract was entered into, any other construction would not make practical business sense.

---

[4] *Accord, Largent v. Ritchey, supra* at 860. *See Eckhoff v. Morgan*, 64 Wn.2d 851, 853, 394 P.2d 898 (1964); *Bloom v. Christensen*, 18 Wn.2d 137, 142, 138 P.2d 655 (1943); *Anderson v. Shain*, 1 Wn. App. 469, 471, 462 P.2d 566 (1969); *Agranoff v. Jay*, 9 Wn. App. 429, 435, 512 P.2d 1132 (1973).

■ There is still another basis upon which recovery must be granted.

It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.

(Footnote omitted.) 5 S. Williston, *Contracts* § 677 (3d ed. W. Jaeger 1961).[5]

In the instant case the plaintiff procured a lessee for the defendant, and the lessee and the lessor agreed to cancel the contract for $10,000; thus the payment of the commission by means of monthly payments throughout the term of the lease was terminated at no fault of the plaintiff-broker. Under these circumstances the plaintiff must recover his commission.

■ Defendant assigns error to finding of fact No. 10 only for the purpose of contesting the admissibility of exhibit 3 because paragraph 26 of the lease agreement is clear and unambiguous. Since there was no reliance placed on the exhibit by the trial court in reaching its decision, this court will not consider error to be prejudicial unless it affects, or presumptively affects, the final result.[6]

■ The final issue is whether the court erred in admitting the testimony of George C. Nichols, a real estate salesman. Defendant contends that the testimony of Mr. Nichols

---

[5] *See Insurance Co. v. Wilkinson*, 80 U.S. (13 Wall.) 222, 20 L. Ed. 617 (1872); *Deibler v. Graham*, 62 A.2d 553, 556 (D.C. Mun. Ct. App. 1948); *McDonald v. Wyant*, 167 Wash. 49, 55, 8 P.2d 428 (1932). *See also* Restatement of Contracts § 295 (1932); *Gent v. Midtown Holdings Corp.*, 10 App. Div. 2d 901, 200 N.Y.S.2d 281, 283 (1960); 12 Am. Jur. 2d § 213, at 954; Annot., 69 A.L.R.2d 1253 (1960); 51 A.L.R.2d 1392 (1960); Annot., 74 A.L.R.2d § 8, at 459 (1960).

To indicate the extent to which New York has gone in enforcing a broker's contract, a real estate broker who brought parties together with the result that contract of sale was signed, was entitled to commissions on the sale even though purchaser served a statutory privilege to rescind the contract of sale because the property had been substantially destroyed by fire after the contract was executed. *Hecht v. Meller*, 23 N.Y.2d 301, 244 N.E.2d 77, 296 N.Y.S.2d 561 (1968).

[6] *State v. Craig*, 82 Wn.2d 777, 784, 514 P.2d 151 (1973).

538

violated the parol evidence rule as the lease speaks for itself and is not ambiguous. The testimony of Mr. Nichols primarily concerned activities subsequent to the written agreement, *i.e.*, the fact that its terms had been carried out, and did not interpret the instrument. The parol evidence rule is stated in *Fleetham v. Schneekloth*, 52 Wn.2d 176, 178-79, 324 P.2d 429 (1958):

> [W]here there is no ambiguity, all conversations, contemporaneous negotiations, and parol agreements between the parties *prior* to a written agreement are merged therein. In the absence of accident, fraud, or mistake, parol evidence is not admissible for the purpose of contradicting, subtracting from, adding to, or varying the terms of such written instruments.

(Italics ours.) Since Mr. Nichols' testimony did not concern the interpretation of the contract, it was not barred by the parol evidence rule.

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.