[No. 33786. Department One. December 3, 1956.]

ASSOCIATED REALTY, INC., *Respondent*, v. RICHARD T. LEWIS et al., *Appellants.*[1]

*Lindberg & Ryan*, for appellants.

*Joseph P. Delay*, for respondent.

SCHWELLENBACH, J.—Associated Realty, Inc., is a corporation engaged in business as a real-estate broker in Spokane. On the morning of October 23, 1953, at about nine o'clock a. m., Louis L. Cerenzia, a salesman for and an officer of Associated, called at the home of Mr. and Mrs. Richard T. Lewis. He told them that he was interested in locating property for oil stations. They said that they were interested in selling their property and agreed to sell it for twenty-four thousand dollars. They also agreed to pay him a five per cent commission if he could secure a buyer.

Cerenzia then called James McCulley, of the Continental

[1]Reported in 304 P. (2d) 693.

Oil Company, who came out to the house at about ten thirty or eleven that morning. He looked the land over and discussed the price and conditions of sale. He returned to the office and drew up an option agreement, which Cerenzia picked up later that afternoon and delivered to the Lewis home, where it was signed that day.

The agreement was prepared by the Continental Oil Company and was entitled "OPTION FOR PURCHASE OF PROPERTY."

It granted an option to purchase, for twenty-four thousand dollars,

"Lots twelve (12) and thirteen (13), except the east forty-five (45) feet thereof, Campbell's Sub-division of Block fifty-four (54), Southeast Addition to Ross Park Addition of Spokane, Spokane County, Washington.
"upon the following terms and conditions, to wit:
"1. Subject to extensions as hereinafter provided, said option to continue until the 7th day of November 1953 for sale confirmation and then will continue for six months subject to and for the purpose of obtaining proper zoning, building and curb cut permits and good title without restrictions."

It also provided:

"11. (Agreement as to special conditions to be stated here.) It is understood Party of the First Part and Associated Realty Co., will handle the zoning petition in the name of Continental Oil Co. Party of the First Part will have the use of improvements now on premises until April 1, 1954, provided sale is concluded based on above mentioned provisions, and will hold Second Party free from all costs, damages, or expenses during the period property and improvements are transferred to Continental Oil Company and First Party vacates. Associated Realty is to receive five per cent of sale price from First Party."

The agreement was signed by Richard T. Lewis and Mary Lewis; Continental Oil Company, by James L. McCulley; and Louis L. Cerenzia.

Lewis and Cerenzia then went to the city planning commission and applied for a petition for rezoning. The property was zoned class 1, residential. They applied for class 3 and a special permit for a service station. They went out

and obtained more than the necessary signatures and returned the petition, on November 13, 1953, to the commission. At a hearing on December 2, 1953, the petition was turned down. There were several appeals, and the zoning was ultimately changed on October 11, 1954. Continental Oil Company completed the purchase of the property and now operates a service station thereon.

In the meantime, the option expired, and, at the request of Continental, Cerenzia returned the fifty dollars earnest money payment. This was in May, 1954. At that time, no appeal was pending from the denial of the zoning petition. Mr. McCulley testified: "So far as we were concerned, at that time it was a dead duck—it was over with."

However, subsequent to that time new appeals were taken, and, as already stated, the original petition was ultimately granted. Also, two new agreements were made between Continental and the Lewises, in which no mention was made of a commission to Associated.

This action for the commission was commenced, and the trial court granted judgment to the plaintiff in the sum of one thousand two hundred dollars, holding that the written agreement of October 23, 1953, including the payment of a broker's commission, was sufficient to satisfy the statute of frauds. This appeal follows.

Error is assigned to the entering of certain findings of fact and conclusions of law, and to the denial of the motion to dismiss at the conclusion of the plaintiff's case.

As to the findings, our investigation of the evidence convinces us that it does not preponderate against them. Appellants did not present any evidence during the trial.

RCW 19.36.010 provides:

"In the following cases any agreement, contract, and promise shall be void, unless such agreement, contract, or promise, or some note or memorandum thereof, is in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized:

". . .

"(5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

We held in *Muir v. Kane*, 55 Wash. 131, 104 Pac. 153, and *Richey v. Bolton*, 18 Wn. (2d) 522, 140 P. (2d) 253, that past services rendered by a broker are sufficient to constitute a valid consideration for a subsequent written agreement by the owner to pay the broker a specified commission. However, in each of those cases, the subsequent written agreement definitely stated that the commission was to be for services rendered. Here the agreement did not state that a commission was to be paid for services rendered. It merely recited that "Associated Realty is to receive five per cent of sale price from First Party."

In *White v. Panama Lbr. & Shingle Co.*, 129 Wash. 189, 224 Pac. 563, White, on January 10, 1921, received the following letter:

" 'Mr. Berney E. White,
" 'Olympia, Washington.
" 'The undersigned is desirous of selling its shingle mill plant situate in the city of Olympia, Washington, and hereby offers to pay you the sum of $5,000 under the terms and conditions herein specified in the event that you secure a purchaser for said property. It is understood that should you find a purchaser who is willing to pay the sum of $60,-000 therefor and make a payment down in the sum of $15,-000 that we will pay you your $5,000 commission out of the initial payment made us of $15,000. Panama Lumber & Shingle Company, By E. J. Bordeaux, Its President.' "

Later, on March 1, 1921, the company and the purchaser secured by White entered into a written contract of sale providing for a payment of sixty thousand dollars for the property involved, fifteen thousand dollars of which was to be paid within sixty days and the balance at stated intervals. On the same day, March 1, 1921, the following memorandum was written:

" 'Memorandum.
" 'To the Capital National Bank,
" 'Olympia, Washington.
" 'Gentlemen: Referring to the matter of the sale of the shingle mill of the Panama Lumber & Shingle Company to D. H. Sears, according to said contract dated March 1, 1921, you are hereby requested and instructed that out of the first payment of $15,000 to be made by said Sears on the

purchase price of said mill you are to pay over to Berney E. White, of Olympia, Washington, the sum of $5,000 and charge the same out of the purchase price of said mill according to the terms of the contract. Dated at Olympia, Washington, March 1, 1921.

> " 'Panama Lumber & Shingle Company
> " 'By E. J. Bordeaux, Its President.
> " 'Party of the First Part.
> " 'Bernie E. White,   (Seal)
> " 'Party of the Second Part.' "

As to the first letter, we held that it was insufficient under the statute of frauds because it failed to give a description of the property to be sold. As to the memorandum to the bank, in holding that it was a sufficient written acknowledgment of indebtedness, we said:

"If this agreement is in itself sufficient to acknowledge an indebtedness for past services and is a promise to pay therefor, then the appellant may recover upon the theory stated in *Muir v. Kane, supra*. The agreement was entered into after the appellant had performed the services for which he seeks compensation. That such subsequent written agreement need not contain all the formalities required by the statute of an original employment of a broker (such as a particular description of the property) seems to be well settled by the authorities.

" . . .

"But if a description of the property sold were necessary to the validity of the instrument it may be found in the contract of sale, to which detailed reference is made in this written order on the bank.

"The respondent contends that the subsequently executed contract involved here neither acknowledges an indebtedness nor promises to pay. While the words 'promise' or 'agree to pay' are not found in the contract, nor any specific words to the effect that the respondent admits its indebtedness to the appellant, yet a reading of the instrument is convincing that such was the purpose and understanding of the parties. The instrument is executed by both the parties hereto and directs the bank to pay the appellant $5,000 out of the first $15,000 which is received from the purchaser. This amounts to a written acknowledgment of the indebtedness from the respondent to the appellant and an agreement to pay it, provided the first $15,000 of the purchase price is paid by the purchaser, and the complaint

alleges that this was paid. If the contract does not mean this, what was its purpose? Why was it executed?"

In the case at bar, there is a promise by the sellers to pay Associated Realty five per cent of the sale price, but there are no specific words stating that this is to be a commission for services rendered in the sale of their property. It is inconceivable that this money was to be paid for assisting Lewis in handling the zoning petition. Here was a corporation engaged in the business of a real-estate broker which, through its agent, was a party to this written agreement. We are satisfied that when the sellers, the buyer, and the broker made the agreement, which stated that the broker was to receive five per cent of the sale price (the customary broker's fee for the sale of city property), it was their understanding and intention that the five per cent was to be a broker's commission for services rendered, provided (and this portion is prospective), that the broker assist the sellers in handling the zoning petition. The record is clear that that portion of the agreement was carried out.

Appellants contend that respondents cannot recover under this agreement because, before the sale was completed, the option expired and the purchaser received back its earnest money payment. Their contention might be valid if this were an agreement employing respondent to sell the property. However, this was an agreement promising to pay a commission to respondent for services rendered (the finding of a purchaser ready, willing, and able to purchase), provided it assist the sellers in handling the zoning petition. Respondent fully performed that portion of the agreement when it secured the necessary number of signers to the petition. This same petition (not a new one) was finally granted, the zoning was changed, and the sale was consummated.

The judgment is affirmed.

DONWORTH, C. J., FINLEY, ROSELLINI, and FOSTER, JJ., concur.