[No. 35211.   Department Two.   September 1, 1960.]

J. H. DRYDEN et al., Respondents, v. VINCENT D. MILLER, INC., Appellant.[1]

*Allen, DeGarmo & Leedy,* for appellant.

*Elliott, Lee, Carney & Thomas,* for respondents.

OTT, J.—J. H. and Winifred J. Dryden, residents of California, owned forty-five acres of timber land near Bellevue. They contacted Vincent D. Miller, Inc., realtors, for the purpose of procuring a purchaser for the property. The Drydens' property had appreciated in value since acquired. They desired a buyer to make a substantial down payment and, for tax reasons, to pay the balance in long-term installments.

February 19, 1957, Howard G. Riddell, an employee of Vincent D. Miller, Inc., received an offer from Harold R. Berndt to purchase the property upon an installment contract for a total price of ninety thousand dollars, plus interest. Mr. Riddell communicated the offer to the Drydens. The offer was embodied in a prepared "Earnest Money Receipt" and was accompanied by a check in the sum of five hundred dollars.

The Drydens accepted the offer, retained the five hundred dollars, and signed the "Earnest Money Receipt," which contained the following provision relative to the commission to be paid by the Drydens:

"I HEREBY AGREE to the above sale and to all the foregoing terms and conditions, and agree to pay VINCENT D. MILLER, Inc., as agent, a commission of $9000.00 for services rendered.

"In the event earnest money receipted for is forfeited, one-half of same shall be retained by or paid to VINCENT D. MILLER, Inc., as agent, to the extent of commission above stated and the balance to the undersigned as owner."

Charles E. Smith and Ray L. Freeman made arrangements with Berndt to join with him as purchasers before the contract for the purchase of the land had been prepared. The Drydens agreed. A contract of sale of the prop-

erty was entered into between Berndt, Smith, and Freeman, as purchasers, and the Drydens, as sellers.

The purchasers paid to the sellers a down payment of fifteen thousand dollars, as provided by the contract. The contract permitted the purchasers to remove the timber at any time, provided that ten dollars per thousand board feet for all timber removed were applied upon the contract. The fifteen-thousand-dollar down payment was obtained by the purchasers from two lumber companies as an advance against timber which was to be cut and removed from the property purchased. The merchantable timber was removed from the land and sold to the lumber companies. The purchasers made additional payments on the purchase price totaling $2,315.60. No further payments were made.

February 25, 1958, the Drydens commenced an action against the purchasers to recover the past due installments under the contract and the balance due for the removal of the timber. The action was dismissed, with prejudice, by stipulation of the parties. In settlement, the contract was mutually rescinded, and the purchasers paid fifteen hundred dollars to the sellers and gave them a quit claim deed to the property.

August 12, 1958, the Drydens commenced this action against Vincent D. Miller, Inc., to recover the nine-thousand-dollar commission they had paid.

The trial court held (1) that the defendant had failed to produce purchasers who were financially able to purchase the land, and (2) that the defendant knew, prior to the time the real-estate contract was signed, that the purchasers had obtained the down payment by advances from lumber companies against timber to be removed from the land; that defendant had failed to disclose this fact to the sellers, and had thereby breached its fiduciary duty. The court concluded that the defendant had "not earned" its commission, and entered judgment for plaintiffs for nine thousand dollars. The defendant appeals.

The appellant's several assignments of error relate to the court's findings and conclusions, as above indicated.

■ We have held that, when a real-estate broker has procured a prospective purchaser who is accepted by the seller, and the seller promises to pay the broker a certain commission for services rendered, the broker has earned the commission, and the promise to pay it may be enforced. *Associated Realty v. Lewis,* 49 Wn. (2d) 514, 304 P. (2d) 693 (1956); *Johnston v. Smith,* 43 Wn. (2d) 603, 262 P. (2d) 530 (1953); *Largent v. Ritchey,* 38 Wn. (2d) 856, 233 P. (2d) 1019 (1951); *Richey v. Bolton,* 18 Wn. (2d) 522, 140 P. (2d) 253 (1943); *Bloom v. Christensen,* 18 Wn. (2d) 137, 138 P. (2d) 655 (1943); *F. E. Ollinger Co. v. Benton,* 156 Wash. 308, 286 Pac. 849 (1930).

■ The respondents, at the time they found the prospective purchaser's offer acceptable and signed the "Earnest Money Receipt," agreed to pay the stated commission of nine thousand dollars, unless the earnest money was forfeited, in which event appellant would have received one half thereof, or two hundred fifty dollars. The agreement expressly provided that the commission was *for services rendered.* The cited cases hold that such an agreement is an enforcible promise to pay for services already performed.

In the instant case, the earnest money was not forfeited. Appellant thereupon, by the terms of the agreement, became entitled to receive nine thousand dollars' commission for services performed. The respondents paid the nine thousand dollars to appellant when they received the fifteen-thousand-dollar down payment. When the purchasers subsequently defaulted, the respondents elected to negotiate a rescission of the contract, rather than to proceed with the action they had commenced to enforce its terms.

The respondents accepted the purchasers produced by the broker. In *Largent v. Ritchey, supra,* the broker had procured a prospective purchaser, and an earnest-money agreement was entered into which provided, in part, as follows:

" 'The undersigned hereby agrees to pay a commission of ................5%...................Dollars ($.....................) to the above agent for services. In the event earnest money is forfeited, it shall be apportioned to seller and agent equally, provided

the amount to agent does not exceed the agreed commission.' "

The buyers thereafter informed the broker that they would not complete the purchase, but, subsequently, did purchase the property directly from the sellers. The broker brought an action for his commission. We held that the commission had been earned, stating (pp. 860, 861):

"It is equally clear that, when both the Ritcheys [sellers] and the Campbells [buyers] had agreed to a sale price and indicated that fact on the 'Earnest Money Receipt and Agreement,' Largent [the broker] was entitled to his commission unless the Campbells failed to complete the purchase [by entering into a contract of sale] and the Ritcheys elected to keep the one thousand dollar earnest-money payment as liquidated damages, in which event Largent would be entitled to half the earnest money, or five hundred dollars. . . .

"It cannot be gainsaid that the 'Earnest Money Receipt and Agreement' now before the court was a binding and enforcible contract. [Citing case.] . . .

"*In suits by brokers for their commissions, it is held that the acceptance by the seller of the purchaser, by entering into a binding, enforcible agreement with him, precludes the seller from thereafter raising any question as to the qualifications and ability of the purchaser to perform.* [Citing cases and authority.]" (Italics ours.)

In *Johnston v. Smith, supra,* the defendants orally employed plaintiff broker to sell certain real estate, and agreed to pay him a commission of five per cent of the sale price. The broker procured a buyer, and a contract was entered into for the exchange of certain properties. The document contained the following:

" 'I hereby ratify and confirm the employment of Ralph A. Johnston, real estate broker, to procure a purchaser for my property above described and in consideration of services performed by said broker in negotiating and bringing about the foregoing sale, hereby agree to pay said broker forthwith a commission of $4250.00.' "

The defendants contended that they did not owe the broker the commission for services performed because the

transaction was not consummated. In rejecting this contention, we stated (p. 606):

"We cannot agree with defendants' conclusion. Aside from defendants' direct promise to pay the commission, set forth in a quoted paragraph of the agreement, and construing the document most strongly against plaintiff, who prepared it, the transaction was consummated, in so far as it concerned plaintiff and defendants, when defendants and Crows executed their contract for deed. It is not disputed that this was a valid and enforcible contract. Defendants accepted it and proceeded to act upon it. When they did so, they were precluded from raising any question regarding the ability of the purchaser to perform."

We adhere to the principles announced in the cited cases, and hold that, under the facts of this case, respondents may not now be heard to complain that appellant failed to procure a purchaser whose financial ability to pay was acceptable to them.

Nor does the trial court's conclusion that the appellant failed to disclose that the purchasers were obtaining the money for the down payment by advances against the timber on the land justify the judgment. The court found, upon conflicting evidence, that appellant acquired this knowledge *after* the earnest-money receipt was signed. At the time the earnest-money receipt was signed, appellant had performed its obligation to produce a purchaser acceptable to the sellers, and was then (in the absence of a finding of fraud, which is not here present) entitled to receive its commission.

The judgment is reversed, and the cause remanded with instruction to enter a judgment of dismissal.

Donworth, Finley, and Rosellini, JJ., concur.

Mallery, J., dissents.

November 30, 1960. Petition for rehearing denied.