[No. 36727. En Banc. August 20, 1964.]

EARL ECKHOFF, *Appellant,* v. BUFORD W. MORGAN *et al.,*
*Respondents.*\*

*Arthur & Hanley,* by *Terence Hanley,* for appellant.

*Marion Garland* (of *Garland & Bishop*), for respondents.

HILL, J.—This is a suit by a real estate broker to recover his commission. The broker received a listing from the defendants for the sale of certain real property on which

\*Reported in 394 P. (2d) 898.

was located a dwelling and other improvements. The broker procured purchasers who were concededly ready, able and willing to buy the property, as it then existed, on terms acceptable to the sellers. The prospective purchasers signed an enforceable "Earnest Money Receipt and Agreement," dated February 27, 1960, paying $1,000 to the broker as earnest money. The same day the sellers signed the "Earnest Money Receipt and Agreement," they signed another agreement appended thereto which reads as follows:

"The undersigned seller on this 27 day of Feb., 1960, hereby accepts and approves the above agreement and agrees to carry out all of the terms thereof and further agrees to pay a commission of Two Thousand One Hundred Fifty Dollars and no/100 Dollars ($2,150.00) to the above agent for services. In the event earnest money is forfeited, it shall be apportioned to seller and agent equally; provided the amount to agent does not exceed the agreed commission. . . ."

Before the transaction was closed, a house and outbuilding on the propery were destroyed by fire without the fault of either party. Insurance in the sum of $6,000 was paid to the sellers.

The purchasers indicated a willingness to proceed, if they received the insurance money, or if the purchase price was reduced by the value of the destroyed buildings. The sellers insisted upon keeping all of the insurance money and refused to make any adjustments on the purchase price. They recognized, however, the right of the purchasers to rescind because the destruction of the buildings made it impossible for them (the sellers) to perform their agreement. The purchasers did rescind, as they were entitled to do because of the sellers' inability to perform their agreement; and the broker, at the direction of the sellers, returned to the purchasers their earnest money.

The broker brought this action to recover his commission; and the trial court dismissed the action, saying in summation:

"Defendants agreed to pay the full commission if the buyer performed. If the buyer refused to perform, the earnest money was to be divided. If performance was pre-

vented through no fault of either party, there was no agreement for payment of any commission whatever. The complaint should therefore be dismissed and the defendants allowed their statutory costs."

We are unable to agree with the trial court.

The broker's services were fully performed; he had procured a then enforceable contract from purchasers able and willing to buy the property on terms satisfactory to the sellers. At that point, the sellers agreed as to the compensation to be paid for those services, *i.e.,* $2,150, but under one condition the compensation might be less, *i.e.,*

". . . In the event earnest money is forfeited, it shall be apportioned to seller and agent equally; provided the amount to agent does not exceed the agreed commission. . . ."

■ This language, despite the claim of the sellers, introduces no ambiguity into the agreement for the broker's compensation. To label such an agreement "ambiguous" is to apply that label to our opinions. We have heretofore had no difficulty in determining the meaning of identical language as contained in such agreements. See *Dryden v. Vincent D. Miller, Inc.* (1960), 56 Wn. (2d) 657, 354 P. (2d) 900; *Ellingsen v. Landre* (1952), 40 Wn. (2d) 116, 241 P. (2d) 207; and *Largent v. Ritchey* (1951), 38 Wn. (2d) 856, 233 P. (2d) 1019. In the *Dryden* case we said:

"The respondents [sellers], at the time they found the prospective purchaser's offer acceptable and signed the 'Earnest Money Receipt,' agreed to pay the stated commission of nine thousand dollars, unless the earnest money was forfeited, in which event appellant [broker] would have received one half thereof, or two hundred fifty dollars. The agreement expressly provided that the commission was *for services rendered.* The cited cases hold that such an agreement is an enforcible promise to pay for services already performed.

"In the instant case, the earnest money was not forfeited. Appellant thereupon, by the terms of the agreement, became entitled to receive nine thousand dollars' commission for services performed. . . ." (p. 660)

In the *Ellingsen* case, *supra,* we said:

"The commission agreement upon which appellant sues was not a contract of employment, but was a direct promise to pay for services already performed. *Largent v. Ritchey,* 38 Wn. (2d) 856, 858, 233 P. (2d) 1019. Under the terms of that agreement, appellant was entitled to his four-thousand-dollar commission unless Helm neglected or refused to complete the purchase and respondents elected to declare a forfeiture of the twenty-five-hundred-dollar promissory note, given as earnest money. . . ." (p. 119)

We have here, as in the cases indicated, a promise to pay the broker a commission for services rendered, subject only to the contingency that the compensation might be a lesser sum if the sellers elected to declare a forfeiture of the earnest money.

There was no such election by the sellers and, indeed, there could not be in this case. The sellers had no right to a forfeiture because the purchasers were always willing to perform their agreement, but the sellers were unable to deliver the specific property they had agreed to sell. The broker was entitled to receive the agreed compensation of $2,150.

The suggestion that, if the broker was insisting on compensation he was estopped or at fault for returning the $1,000 earnest money to the purchasers at the sellers' request, is without support in law or equity. It is conceded that if the sellers were unable to deliver the specific property they had agreed to sell, the purchasers were entitled to either take what the sellers could deliver to them, or to rescind the agreement. When they made the latter election (after the sellers had refused to make any adjustment in the purchase price, or substitute the insurance for the property destroyed), the purchasers were clearly entitled to the return of their earnest money, and the broker had no right to retain it.

The judgment of dismissal is reversed, and the trial court is directed to enter a judgment for the plaintiff-broker for $2,150, together with his costs.

OTT, C. J., DONWORTH, WEAVER, HAMILTON, and HALE, JJ., concur.

HUNTER, J. (dissenting)—The crux of this case is whether, when executing the earnest money agreement, the parties contemplated that the broker was to receive his full commission if the sale was not consummated without the fault of the sellers. The agreement is silent on this contingency.

In the instant case, the contract must be construed most strongly against the broker who prepared it. *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454 (1958). The contract must be read in its entirety and language in the contract cannot be considered in isolation. *Johnston v. Maryland Cas. Co.*, 22 Wn. (2d) 305, 155 P. (2d) 806 (1945).

It seems to me that the object and purpose of the parties when they entered into the agreement is obvious. The sellers desired to sell their property, and the broker was willing to assist by obtaining a purchaser. When the property was sold, the broker was to be paid his commission. The broker protected his commission, if the sale was not consummated by some fault of the sellers. Any other purpose for entering into the earnest money agreement is inconceivable to me, and an examination of the agreement in its entirety makes this intent clear.

Apparently this understanding was so inherent in the undertaking that it did not occur to the parties it was necessary to provide that no commission would be paid if the sale was not consummated, through no fault of the sellers, after the broker obtained the purchasers.

The provision for the sellers and purchasers to share in the $1,000 earnest money, in the event the purchasers failed to consummate the agreement to purchase, is inconsistent with any theory that the broker is to be paid the full $2,150 commission if the sale should not be consummated.

All of the cases cited by the majority stand for the proposition that the broker shall not be precluded from being paid his commission if the sale is not consummated through some fault of the sellers. Not one case has been cited, nor have I been able to find one, where the broker was held to be entitled to his full commission when the sale was not consummated, through no fault of the seller, under an agreement similar to the agreement in the instant case.

Although the broad language of the cases lends some support to the broker's theory, the facts are not similar, and the cases are, therefore, not controlling.

The destruction of the building by fire on the property contracted to be sold made the performance of the contract of sale impossible. The fact that the sellers were unwilling to adjust or agree to a new contract is wholly unrelated to any obligations under the contract in question.

There was a failure of consideration of the very object and purpose for which the broker's services were bargained since the sale of the property became impossible through no fault of the sellers.

The judgment of the trial court should be affirmed.

FINLEY and ROSELLINI, JJ., concur with HUNTER, J.