[No. 233-3.    Division Three.    March 8, 1971.]

R. W. CLARKSON, *Appellant,* v. JACK H. WIRTH *et al.,*
*Respondents.*

*James R. Young,* for appellant.

*Robert L. Fraser* (of *Dano, Cone & Fraser*), for respondents.

EVANS, J.—Plaintiff, a real estate broker, brought this action to recover a real estate commission, and appeals from a judgment for defendants.

On June 15, 1965 plaintiff R. W. Clarkson obtained from defendants an exclusive listing agreement to sell certain property owned by defendants in Cle Elum, Washington. The agreement gave plaintiff an exclusive right to sell the property for a period of 30 days, and thereafter until with-

drawn by 10 days written notice. The terms of the sale were to be for a total purchase price of $59,500, with $30,000 downpayment and the balance due at the rate of $300 per month, including interest at 6 per cent. The agreed real estate commission to be paid was $5,950. Defendants testified they did not get a copy of the listing agreement and were unaware that the exclusive listing continued until withdrawn by 10 days written notice. July of 1965, plaintiff requested and defendants orally agreed to a verbal extension of the listing agreement. During that month plaintiff obtained two brothers, Harold and Robert Grimnes, as prospective purchasers of defendants' property, and on July 20, 1965 the Grimnes brothers and defendants entered into an earnest money agreement, which provided in part:

> This offer to purchase is made subject to purchasers disposing of certain properties upon which deals are now pending and said deals to be closed prior to the closing of this deal. Legal description of these properties will be furnished sellers upon request. Sale to be closed not later than October 1st, 1965.

All parties to the contract understood the downpayment of $30,000 would have to come from the proceeds of those properties owned by the purchasers, upon which deals were then pending. The plaintiff agreed to aid the Grimnes brothers in selling their property. He attempted to do so by advertising their property to other brokers but was unable to generate a sale by October 1, 1965. Prior to that date and on September 12, 1965 plaintiff wrote a letter to defendants, in which he stated:

> Well here it is almost October 1st and we are no closer to a deal now than we were in the spring. All summer wasted and nothing actually accomplished. Immediately upon my arrival back in Seattle, I put the apartment building and Bob's acreage in the hands of several realtors, hoping for quick action. Harold spent some money fixing up his place and we sent out about 25 or 30 listings to offices in the neighborhood of the apt bldg. I felt it was going to be a deal when I asked you for the extra time to work it out but I'm not feeling that way now and am truly sorry that it hasn't worked out for all con-

cerned. I feel though, that the boys were sincere but you can't spend sincerity at a store—only $.

I know you wish to sell so if there is any deal pending I'd take it subject to a miraculous event of a sale over here. I talked with Rod Loveless about buying the lower part & Grimnes the upper. He's coming over.

The trial court found that following this letter the plaintiff made no effort to sell either the Grimnes property or the defendants' property. Acting upon the assumption that the Grimnes property could not be sold to supply the downpayment on the Grimnes-Wirth agreement, the defendants Wirth listed their property with another real estate broker, who found a prospective purchaser in the spring of 1966. However, this sale did not materialize.

In April, 1966 the Grimnes brothers, learning that the Wirth property had not yet been sold, and still being interested, joined with two other men, Dan and Jack Webb, in an offer to purchase the Wirth property. The parties negotiated the sale without the benefit of plaintiff's services, and the sale was closed on August 26, 1966. By the terms of this agreement the net proceeds to defendants were the same as provided in the 1965 earnest money agreement between Grimnes and Wirth, but the terms varied widely. The two agreements differed also in that Dan and Jack Tucker were additional parties as purchasers. Upon learning of the sale, plaintiff demanded a commission and, upon defendants' refusal to pay, commenced this lawsuit.

Plaintiff's first two assignments of error are directed to certain findings of fact entered by the trial court. We have examined the record and find substantial evidence to support those findings and they will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Plaintiff next assigns error to the following conclusion of law entered by the trial court:

## II.

Plaintiff is not entitled to any commission from defendants in that the earnest money agreement entered

into between the plaintiff and Harold G. Grimnes and Robert R. Grimnes is unenforceable for the following two reasons, to-wit:

(a) The offer to purchase was made subject to the purchasers disposing of certain properties on which deals were then pending with said deals to be closed prior to the closing of the transaction contained in the earnest money agreement, said transactions never being closed.

(b) The offer to sell and the offer to purchase were clearly made subject to the condition that the sale was to have been closed not later than October 1, 1965.

■ In *Ross v. Harding*, 64 Wn.2d 231, 236, 391 P.2d 526 (1964) the court established the following test to determine whether a particular promise to perform is conditional:

Whether a provision in a contract is a condition, the nonfulfillment of which excuses performance, depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances. 5 Williston, Contracts (3d ed.) § 663, p. 127.

Any words which express, when properly interpreted, the idea that the performance of a promise is dependent on some other event will create a condition. Phrases and words such as "on condition," "provided that," "so that," "when," "while," "after," or "as soon as" are often used. 12 Am. Jur. § 295, p. 849; 5 Williston, Contracts (3d ed.) § 671, p. 161.

It is clear from the evidence that it was the understanding of the Grimnes brothers as purchasers, and the defendants as sellers, that performance by the purchasers was conditioned upon the sale of the Grimnes property by October 1, 1965. We are unable to give any other construction to the phrase "this offer to purchase is made subject to purchasers disposing of certain properties . . ."

■ Plaintiff contends, however, that he obtained the Grimnes brothers as purchasers, their offer was accepted by defendants, and even though the Grimnes brothers were unable to obtain adequate financing to purchase before October 1, 1965, plaintiff was still entitled to his commission

upon execution of the earnest money agreement. Plaintiff bases this contention upon the holding in *Dryden v. Vincent D. Miller, Inc.,* 56 Wn.2d 657, 660, 354 P.2d 900 (1960), where the court stated:

> We have held that, when a real-estate broker has procured a prospective purchaser who is accepted by the seller, and the seller promises to pay the broker a certain commission for services rendered, the broker has earned the commission, and the promise to pay it may be enforced.

In *White & Bollard, Inc. v. Goodenow,* 58 Wn.2d 180, 187, 361 P.2d 571 (1961) the court made the following observation concerning the above stated rule in *Dryden:*

> Implicit in this rule is the requirement that the purchaser be willing to purchase, and that in contracting with the seller, he has agreed to purchase the property. Here we do not have such an unqualified promise, but rather a conditional promise, and the respondent's right to collect his fee was also made conditional upon the purchaser's obtaining satisfactory financing. *The securing of such financing was a condition precedent. Until it had occurred, the respondent was not obliged to sell, and the purchaser was not obliged to buy the property, and the appellant was not entitled to its fee.*

(Italics ours.) We hold the Grimnes promise to purchase was conditional and the plaintiff was entitled to his commission based upon the earnest money agreement only in the event the Grimnes brothers obtained adequate financing by October 1, 1965.

The next issued raised by plaintiff's assignments of error is whether he can maintain an action for a commission founded upon the listing agreement of June 15, 1965. These assignments are directed to the following conclusion of law entered by the trial court:

### III.

The plaintiff is estopped from making any claim for commission from defendants based upon the sale for the following reasons, to-wit:

(a) The letter which plaintiff sent to defendant dated September 12, 1965 advised the defendants to go ahead and make any deal to sell.

(b) That from and after September 12, 1965 the plaintiff who had a listing on the property owned by Harold G. Grimnes and Robert R. Grimnes made no effort at all to sell said property, this being the property that was to be sold as a condition of the offer to purchase defendant's property as set forth in the earnest money agreement of July 20, 1965.

(c) From and after September 12, 1965, the plaintiff made no effort at all to sell property owned by the defendants and for which the plaintiff claims a real estate commission.

While this "conclusion of law" also includes findings of fact, there is substantial evidence to support those findings of fact.

■ The rule on estoppel was most recently enunciated in *Spake v. Elder*, 1 Wn. App. 116, 121, 459 P.2d 820 (1969), wherein the court quotes from *Nelson v. Bailey*, 54 Wn.2d 161, 168, 338 P.2d 757, 73 A.L.R.2d 1400 (1959), as follows:

> The essential elements of an equitable estoppel as related to the party estopped are: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. *Moore v. Dark*, 52 Wn. (2d) 555, 327 P. (2d) 429.

In considering the trial court's ruling on estoppel one factor deserves emphasis. The defendants were inexperienced in real estate transactions, whereas the plaintiff had been a real estate broker for 34 years. Defendants had considerable respect for the expertise of plaintiff and placed their trust in him. At the time defendants signed the exclusive listing agreement they told plaintiff they did not want to "tie up" their property for more than 30 days. The plaintiff supplied the listing form but the defendants testified they did not receive a copy of it. Defendants testi-

fied it was their understanding the listing agreement was for 30 days only. They were reenforced in this belief when plaintiff asked for an extension of the listing agreement. The fact that he made such a request is clearly indicated by the letter of September 12, 1965, in which he stated, "I felt it was going to be a deal when I asked you for the extra time to work it out . . ."

It thus appears the essential elements of equitable estoppel, as enunciated in *Spake v. Elder, supra,* are present. The plaintiff's request for an extension of time, as established by the letter of September 12, together with his failure thereafter to make any effort to sell either the Grimnes property or the defendants' property are inconsistent with the claim plaintiff now asserts. Defendants acted on the statement and actions of the plaintiff by negotiating their own sale and will suffer substantial injury if plaintiff is allowed to contradict or repudiate his prior actions and conduct.

The facts as found by the trial court amply support the court's conclusion that plaintiff is estopped to claim a real estate commission on the basis of the listing agreement.

We have considered and find no merit to plaintiff's remaining assignment of error directed to the trial court's finding that the sale by defendant Wirth to Robert and Harold Grimnes, Jack Webb and Dan Tucker in August 1966 was not effected by any efforts on the part of the plaintiff, nor was he a procuring cause or contributed to said sale. There is substantial evidence to support the finding and it will not be disturbed.

Judgment affirmed.

MUNSON, C.J., and GREEN, J., concur.