IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 32158-4-III |
| JOANNE M. GRAHAM, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ARCH D. GRAHAM, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — Joanne Peterson appeals the trial court's denial of her motion to clarify a provision of her divorce decree and her motion for entry of a QDRO.[1] We reverse the trial court's denial of Ms. Peterson's clarification request and remand for further proceedings in accordance with this opinion.

## FACTS

Acting pro se, Ms. Peterson petitioned for legal separation from her then husband, Arch D. Graham, on April 25, 2008. Mr. Graham joined in the petition. Under

---

[1] Qualified Domestic Relations Order. 26 U.S.C. § 414(p).

paragraph 3.2 entitled "Property to be Awarded Husband, Other" Ms. Peterson drafted a provision which read:

> The [R]espondent [Mr. Graham] is awarded his Northwest Ironworker Retirement Trust Pension and Annuity, providing he maintain medical, dental and vision insurance for the petitioner [Ms. Peterson]. In the event this insurance is not provided, Respondent shall pay to the Petitioner the cash amount needed for her to secure her own insurance.

Clerk's Papers (CP) at 9. The legal separation was granted and was eventually converted into a dissolution on August 25, 2011.

Mr. Graham did not provide medical insurance, nor did he provide the cash equivalent. As a result, Ms. Peterson filed a motion and declaration for a QDRO to enforce the decree provision. The court refused to enter the QDRO, reasoning that it did not have the authority to do so because the dissolution decree did not contemplate it.

Ms. Peterson then filed a motion and declaration to clarify the decree and enforce the property division. She asserted that "clarification is necessary because there is nothing in the Decree regarding enforcement of the proviso in the event the Respondent does not 'maintain medical, dental and vision insurance for the petitioner.'" CP at 29. She also argued that the challenged provision contained a proviso by which Mr. Graham was not entitled to receive his pension if he failed to provide the medical insurance or cash equivalent. She again sought the entry of a QDRO as a means of enforcing the provision.

The trial court denied the motion to clarify and enter a QDRO. In its supporting findings of fact and conclusions of law, the trial court reasoned that the decree was not

2

vague, so clarification was not required, and that the provision expressly provided money damages if the husband did not maintain insurance. The court thus construed the language as awarding Mr. Graham his retirement in exchange for his promise to provide Ms. Peterson with medical coverage. If Mr. Graham failed to provide Ms. Peterson with medical coverage, her recourse would be money damages.

Ms. Peterson next filed a CR 60 motion to vacate paragraph 3.2 of the decree. She asserted as grounds for the CR 60 motion clerical errors, fraud and misrepresentation, and extraordinary circumstances. After hearing argument from Ms. Peterson, the court found that

> the petitioner as a pro se drafted the language regarding respondent's pension and payment of petitioner's health insurance, and that she has exercised the remedy she drafted, that is, to seek contempt provisions.

CP at 49. The court then concluded that CR 60(a) was inapplicable and that no provision of CR 60(b) supported Ms. Peterson's motion. The court denied the motion to vacate.

Ms. Peterson then timely appealed.

## ANALYSIS

Ms. Peterson argues that the court erred when it failed to construe the language in paragraph 3.2 in the decree as creating a condition precedent to Mr. Graham's pension

3

No. 32158-4-III
*In re Marriage of Graham*

award. She also argues that the court erred when it refused to enter a QDRO as a remedy.[2]
We address the arguments in turn.[3]

*The Decree Language*

This court reviews the language in a dissolution decree de novo. *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). The general rules of construction that apply to statutes, contracts, and other writings also apply to decrees. *In re Marriage of Lee*, 176 Wn. App. 678, 688, 310 P.3d 845 (2013). "Courts can neither disregard contract language which the parties have employed nor revise the contract under a theory of construing it." *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980). Additionally, an "interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective." *Id.*

In the present case the trial court erred when it failed to construe the word "providing," as a condition precedent. "Any words which express, when properly interpreted, the idea that the performance of a promise is dependent on some other event will create a condition. Phrases and words such as 'on condition,' 'provided that,' 'so that,'

---

[2] Ms. Peterson also assigned error to the court's refusal to grant her CR 60 motion. Because of our resolution of the first issue, we do not reach the CR 60 argument.

[3] Ms. Peterson also moved to strike portions of the factual allegations in the brief of respondent. We did not rely upon any factual allegations outside of the record of this case and therefore deny the motion in order to prevent further delay as there is no prejudice to Ms. Peterson.

4

'when,' 'while,' 'after,' or 'as soon as' are often used." *Ross v. Harding*, 64 Wn.2d 231, 237, 391 P.2d 526 (1964); *Clarkson v. Wirth*, 4 Wn. App. 401, 404, 481 P.2d 920 (1971).

In *Ross*, the court was interpreting the provision: "it is specifically understood and agreed that this offer is made *subject* to the written consent." 64 Wn.2d at 237. The court asserted that it "would be difficult to choose words to more precisely express an intention to create a condition precedent than those used in the contract here to be construed." *Id.*

The present case is similar to *Ross* in that the parties here clearly used a word that indicated an express intention to create a condition precedent. The challenged provision read that Mr. Graham was awarded his pension "*providing* he maintain medical, dental and vision insurance for the petitioner [Ms. Peterson]." CP at 9 (emphasis added). The word "providing" is substantively similar to "provided that," a phrase recognized as a common conditional phrase. *See, e.g., Ross*, 64 Wn.2d at 236; *Clarkson*, 4 Wn. App. at 404; 5 SAMUEL WILLISTON, CONTRACTS § 671, at 161 (Walter H. E. Jaeger, 3rd ed. 1961). Webster's Dictionary also defines the word "providing" as, "on condition that." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1827 (1993). Thus, in the present case, the word "providing" created a condition precedent. To construe the language the way the trial court did would render the word "providing" ineffective. As a result, the trial court erred when it failed to construe and give meaning to the word "providing" as creating a condition precedent.

If one construes the language with the condition precedent, Mr. Graham must fulfill his condition first—either providing insurance for Ms. Peterson or the cash equivalent—before he is entitled to the award of his pension. Because Mr. Graham did not fulfill the condition precedent, Ms. Peterson never lost her claim of right to Mr. Graham's pension.

The trial court erred in denying the motion to clarify.

*QDRO*

Ms. Peterson argued extensively that the proper remedy in this case was to enter a QDRO against Mr. Graham's pension in the amount of her medical coverage expenses. The court did not err when it refused to enter a QDRO as a remedy where the decree did not—and currently does not—contemplate a QDRO.

It is well settled that a "court may not add to the terms of the agreement or impose obligations that did not previously exist." *Byrne v. Ackerlund*, 108 Wn.2d 445, 455, 739 P.2d 1138 (1987). Here, although the pension was considered in the property division portion of the decree, the parties did not discuss the details of the division in the decree, such as their respective shares of the pension, or whether a QDRO would be the device used to distribute the funds. As a result, the court would have been modifying the terms of the agreement and imposing obligations that did not exist if it had entered the QDRO at

6

that procedural juncture. Therefore, the court did not err when it refused to enter a QDRO where the current decree did not consider one.[4]

*Attorney Fees*

Both parties request their attorney fees on appeal under RAP 18.1 and RCW 26.09.140, while Ms. Peterson additionally seeks attorney fees on the basis of Mr. Graham's alleged intransigence. We decline to award attorney fees. The trial court, in its discretion, may wish to address appellate attorney fees upon remand if the parties renew their requests.

As substantially prevailing party on appeal, Ms. Peterson is entitled to her costs. RAP 14.3(a).

Affirmed in part, reversed in part, and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

_____

[4] By so holding, we are not foreclosing QDRO as an appropriate remedy for the court to consider when it divides Mr. Graham's pension.

7